Betty THOMAS, Plaintiff,

v.

William W. LAWRENCE,
Trustee, Defendant.

Civil Action No. 3:02CV–81–S.

United States District Court,
W.D. Kentucky,
at Louisville.

Nov. 13, 2003.

Jon W. Ackerson, Louisville, KY, for Plaintiff.

David Marcus Cantor, Seiller & Handmaker, Louisville, KY, for Defendant.

### *MEMORANDUM OPINION*

SIMPSON, District Judge.

This matter is before the court on appeal from the decision of the United States Bankruptcy Court granting partial summary judgment to the Chapter 7 Trustee, and avoiding the transfer of real property located at 1720 Riverside Drive, Louisville, Kentucky, by the debtor, Ronald Miller, to his sister, Betty Thomas. Thomas also appeals the supplemental decision finding that the Trustee has standing to seek avoidance of the transfer, rendered by the Bankruptcy Court on remand from this court in which we ordered additional findings.

The court will briefly restate the underlying facts.

Miller and Linda Allen were divorced in 1995 after twenty-nine years of marriage.

The parties executed a Property Settlement Agreement which provided, in pertinent part, that Miller would retain the Riverside Drive property which he jointly owned with Thomas. On March 8, 1995, Allen quit claimed her marital interest in the property to Miller. On September 8, 1995, Miller conveyed his interest in the Riverside property to Thomas for no consideration. The deed recited that the transfer was "for and in consideration of the love and affection of Ronald J. Miller for his sister Betty L. Thomas," and that the fair cash value of the property at the time of the conveyance was $70,500.00.

The Property Settlement Agreement provided that Allen receive three promissory notes from Miller for her share of the marital assets. The first two were paid in full by Miller. The third note in the amount of $200,000.00 was secured by Miller's stock in K & M Properties, one of Miller's companies. Miller had paid $53,515.00 toward this note prior to filing for bankruptcy on March 23, 2000. Miller was obligated under the Settlement Agreement to pay monthly maintenance to Allen. This obligation was not secured by a lien on any property. Miller also agreed to assume the debt arising from an unsecured VISA card in Allen's name. Both the maintenance obligation and VISA debt were listed by Miller as unsecured claims on Miller's Chapter 7 Schedule F.

The Trustee filed an Adversary Proceeding seeking to avoid the transfer of the Riverside property to Thomas, pursuant to the Trustee's "strong arm" powers, as set forth in 11 U.S.C. § 544(b). Section 544(b)(1) states that

Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

The trustee thus has the "threshold burden pursuant to Section 544(b) of establishing the existence of a creditor holding an unsecured claim allowable under Section 502 as of the date of the transfers subject to attack under applicable law." *In re Akin,* 64 B.R. 510, 513 (Bankr. W.D.Ky.1986).

We held in our earlier opinion that the Bankruptcy Court had failed to make findings concerning whether an allowable unsecured claim existed which would convey standing upon the Trustee in this matter. While the Bankruptcy Court had discussed the third promissory note and the fact that a portion of that debt remained unpaid, there had been no findings concerning whether the stock which had been pledged to secure the debt had sufficient value to secure the full amount owed on the date of the transfer of the Riverside property. The case was remanded to the Bankruptcy Court for further findings of fact and additional analysis regarding the question of the standing of the Chapter 7 Trustee under 11 U.S.C. § 544(b).

On remand, the Bankruptcy Court first held a status conference to address what procedure should be employed to comply with the District Court's remand order. On that date, the Trustee stated that he would offer evidence concerning the VISA card and maintenance obligations. A date was agreed to by the parties for an evidentiary hearing. At the hearing, Thomas, who has represented herself throughout this matter, called no witnesses of her own. She offered minimal evidence by way of cross-examination of the only witness presented by the Trustee, Allen. At no time did Thomas indicate that she was unprepared to go forward or request additional time to engage in discovery. No evidence

was adduced by either party concerning the value of the stock securing the remaining obligation under the third promissory note. The focus was solely on the maintenance obligation and the assumed VISA debt.

After hearing the evidence, the Bankruptcy Court ruled that prior and subsequent to September 8, 1995, the date of the transfer of the property to Thomas, Miller was indebted to Allen for maintenance and for that part of the VISA debt which was outstanding at the time of the property transfer. The court noted that an unpaid portion of both debts existed at the time of the filing of the Petition for Chapter 7 relief and were listed as unsecured debts on Miller's Schedule F. The Bankruptcy Court concluded that the Trustee had standing to bring the avoidance action against Thomas as he had shown the existence of an unsecured creditor who could void the transfer under applicable law.

In concluding that the transfer of the Riverside property was void, the Bankruptcy Court found that no genuine issue of material fact existed and that the Trustee was entitled to judgment as a matter of law.

The Trustee asserted that the transfer of the property could have been avoided by Allen under KRS 378.020.[1] The court found that the elements of KRS 378.020 had been met. The court found that the claim was allowable under Section 502 and that Allen was a then existing creditor. The deed from Miller to Thomas was recorded on September 14, 1995, some five and one half months after the execution of the Settlement Agreement. The deed itself indicated that the transfer was made without consideration and the evidence adduced supported that representation. The court found that the asserted rationale for the transfer variously expressed by Miller and Thomas was immaterial. The court found a lack of evidence of waiver by Allen of the right to contest the disposal of the Riverside property. Further, the solvency of the debtor at the time of the transfer plays no part in the determination regarding avoidance under KRS 378.020.

The court thus concluded that the Trustee had met his burden of proof of avoidance of the subject transfer to Thomas, in accordance with *In re Akin, supra.*

Thomas claims that she was not given an adequate opportunity to contest the issue concerning the unsecured VISA debt and maintenance obligations. She did not object, however, at either the status conference or at the hearing. She was provided copies of the documentary evidence in advance of the hearing. She cross-examined Allen concerning the claims in issue and offered informed argument concerning the status of these obligations. Despite the fact that she proceeded in this matter *pro se*, Thomas filed articulate briefs on the pertinent legal questions. There is no evidence to support the contention that Thomas was unprepared or ill-equipped to proceed in the January, 2003 hearing.

Thomas also raises a number of arguments, unsupported by any citation of authority, concerning the maintenance obligation and the assumed VISA debt, attempting to establish that they do not

---

1. Allen was found by the Bankruptcy Court to be a then existing creditor holding a number of unsecured claims at the time of the transfer. While the court focused on the third promissory note in its first memorandum opinion, the unsecured nature of that debt was not pursued by the Trustee. Rather, the Bankruptcy Court found in its supplemental opinion that the maintenance obligation and VISA debt had been shown to be unsecured claims. Any of these claims may meet the requirements of KRS 378.020, provided they are allowable under Section 502 as of the day of the transfer.

constitute "claims" which would confer standing upon the Trustee. These arguments are without merit.

■ First, Thomas urges that because Miller's maintenance payments came due once per month, and he was not in arrears on the payments, the obligation was not a "claim" of Allen's on the date of the transfer of the Riverside property. Second, she asserts that the VISA debt was a debt to the credit card company, not to Allen.

These arguments merit little discussion. Both the monthly maintenance and the VISA debt were obligations made by Miller to Allen in the Settlement Agreement. A claim under the United States Bankruptcy Code includes any right to payment. 11 U.S.C. § 101(5)(A).[2] Allen's right to payment is clear.

Both the maintenance obligation and assumed VISA debt were properly shown to be unsecured claims by Allen, a then existing creditor of Miller at the time of the transfer of the Riverside property. In her initial appellate brief, Thomas raised three claims of error in the Bankruptcy Court's judgment voiding the transfer. The first two issues have already been addressed herein.

Thomas argued that the Trustee lacked standing to avoid the transfer. We determined after remand and additional findings that Thomas had been afforded a full and fair hearing upon adequate notice, and that the Trustee's standing had been established. Having found that the maintenance obligation and VISA debt satisfied the requirements of unsecured claims under KRS 378.020, Thomas' second ground for error has been rejected.

■ Thomas' third ground is that a genuine issue of material fact existed which precluded the Bankruptcy Court from granting summary judgment to the Trustee. Nothing identified by Thomas as an "issue of fact" calls into question the judgment in this case. The fact that the parties to the transaction desired to have the property remain in the family, that Miller no longer wanted to be burdened with upkeep expenses, and that Thomas assumed the upkeep expenses herself were not found by the Bankruptcy Court to constitute "consideration" for the transfer where there clearly was none. Finally, the fact that the Settlement Agreement provided that Miller was free to dispose of his property does not preclude avoidance of the transfer pursuant to the Bankruptcy Code and Kentucky law.

No error has been shown in the findings and orders of the Bankruptcy Court in this matter. The rulings will be affirmed by separate order.

2. Claim includes these rights to payment whether fixed, contingent, matured, unmatured, secured, unsecured. § 101(5)(A). The definition clearly eliminates Thomas' concern that Miller's maintenance obligation did not ripen until Allen had survived the month. The fact that maintenance payments would cease upon Allen's death is of no significance to the determination that Allen had a right to maintenance payments.